**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Pierce Hare, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>BeReal SAS**,**<br><br>　　　　　　　　　　Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Pierce Hare (the "Plaintiff"), on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against the above-captioned Defendant, BeReal SAS (the "Defendant" or "BeReal") upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel as follows:

I.   **NATURE OF THE ACTION**

1.   Plaintiff Pierce Hare brings this action against BeReal, a popular social media application, under the Illinois Biometric Information Privacy Act, 7410 ILCS 14/1, *et seq.* ("BIPA"), pursuant to which he seeks statutory damages as well as other appropriate relief under BIPA.

2.   BIPA prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless it: (1) informs that person in writing that identifiers and information will be collected and/or stored, (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored, or used, (3) receives a written release from the person for the collection of that data, and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b). This action alleges that BeReal violated 740 ILCS 14/15(a) and (b).

3.   In 2020, BeReal released a social media application by the same name, BeReal.[1] Generally, the BeReal application works as follows: "at a specific time of day, [the user] see[s] a

---

[1] John Brandon, "BeReal is the Social Media App of the Year for One Reason Only," FORBES (ONLINE)(Dec. 13, 2022), at https://www.forbes.com/sites/johnbbrandon/2022/12/13/bereal-is-the-social-media-app-of-the-year-for-one-reason-only/?sh=670b6d927f41.

notification to snap a photo and post what is happening in real life[.]"[2] According to Defendant, "[e]very day, everyone in [the users'] time zone receives a notification at the same time. [The User then] has 2 minutes to open the app and take your BeReal. A BeReal isn't just a photo. It uses front and back cameras to capture your surroundings."[3]

4. What started as a smaller company based in Paris, France, has become a global phenomenon. Since the creation of the BeReal social media application (the "App"), it has been downloaded more than 100 million times by users around the world.[4] As of March 2023, the App was downloaded over 33 million times in the United States.[5] Currently, BeReal, because of the skyrocketing success of the App, has a valuation of approximately $600 million after raising millions from venture capital firms.[6]

5. While BeReal encourages the App's users to be authentic and genuine through its spontaneous picture taking – it is less than encouraging how "real" the Defendant is with users when it comes to data privacy.

6. BeReal, in violation of BIPA, fails to disclose that the App collects Plaintiff's and other similarly situated users' "biometric identifiers" ("biometrics") without their informed, written consent. BeReal's collection of these biometrics without the consent or appropriate notice

---

[2] *Id.*

[3] https://help.bereal.com/hc/en-us/articles/7350386715165--Time-to-BeReal-, (last accessed Jul. 11, 2023).

[4] https://www.businessofapps.com/data/bereal-statistics/, (last accessed Jul. 11, 2023).

[5] *Id.*

[6] https://www.spglobal.com/marketintelligence/en/news-insights/podcasts/next-in-tech-episode-123, (last accessed Jul. 11, 2023).

to users violates BIPA. Additionally, BeReal does not provide an adequate biometric data retention schedule, this also violates BIPA.

7. Plaintiff brings this Action on behalf of himself and all other similarly situated Illinois residents for the aforementioned willful violations of the BIPA statute, which provides for statutory damages in the amount of $5,000 per intentional and/or reckless violation, and, alternatively, in the amount of $1,000 per negligent violation.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the Defendant pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this Action (1) involves thousands of putative class members; (2) there is minimal diversity between at least one member of the putative Class and the Defendant, and (3) in the aggregate, the claims of Plaintiff and the putative Class exceed the sum or value of $5,000,000, exclusive of costs and interest.

9. Alternatively, this Court has diversity jurisdiction over the litigants because the Defendant, on the one hand, is located in France and Plaintiff and the putative Class members, on the second hand, are from Illinois, and there is over $75,000 in damages as alleged by the Plaintiffs, independent of costs and interest.

10. This Court has personal jurisdiction over Defendant because the Defendant's App is used in and works in Illinois. Defendant uses and collected data derived directly from Illinois consumers, including Plaintiff, and exposed Illinois residents to ongoing privacy risks within Illinois based on the collection, capture, obtainment, disclosure, and dissemination of biometrics. Furthermore, the images and recordings Defendant uses for the unlawful collection capture and obtainment of biometrics were taken in Illinois. Defendant knew or should have known that its collection, capture, obtainment, disclosure, or dissemination of biometrics in Illinois would injure

Illinois citizens and residents. Defendant knew or had reason to know that collecting, storing, using, disclosing, or disseminating Illinois citizens' and residents' biometrics without providing the requisite notice or obtaining consent would deprive Illinois citizens and residents of their statutorily protected privacy rights, neutralize Illinois citizens' and residents' ability to control access to their biometrics, and expose Illinois citizens and residents to potential surveillance and other privacy harms as they went about their lives within the State.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because the conduct giving rise to the allegations and claims asserted in this Action occurred in this District.

### III. PARTIES

*Plaintiff Pierce Hare*

12. Plaintiff Hare is a resident and citizen of Illinois. From 2020 through early 2023, Plaintiff routinely used BeReal's App in Illinois and sent from Illinois BeReal images to other App users. The relevant scans of Plaintiff's face on the App occurred in Illinois, and the violations of BIPA alleged herein occurred primarily and substantially within Illinois. Plaintiff was unaware of and did not agree to the capture, collection, retention, or storage of his biometrics.

*Defendant BeReal SAS*

13. Defendant BeReal SAS is a French simplified joint-stock company located in Paris, France at 30/32 Boulevard Sebastopol, 75004 Paris, France.

## IV. SUBSTANTIVE ALLEGATIONS

### A. BeReal's Business and the BeReal Application

14. In 2020, Alexis Barreyat and Kevin Perreau launched the BeReal App.[7] The goal of BeReal's App was to "change" the way users interacted with social media by offering a more "authentic" experience.[8] BeReal's mission is "[t]o create an authentic world that keeps you connected with the people you really care about."[9] In support of this mission, BeReal offers four core values: to be "honest, genuine and transparent," to "innovate, experiment, and disrupt in order to create positive change," to be "humble," and to "take ownership for … decisions … own mistakes … and [to] keep each other accountable."[10]

15. This innovative social media application has exploded in popularity and has attracted both new users and new investors from around the world.

16. A recent BeReal valuation was worth approximately $600 million after raising millions from venture capital firms.[11] In total, there are approximately 33.3 million U.S. residents who use the BeReal App.[12]

---

[7] Wynne Davis, *"BeReal is Gen Z's new favorite social media app. Here's how it works,"* NPR WNYC (ONLINE) (Apr. 16, 2022), at https://www.npr.org/2022/04/16/1092814566/bereal-app-gen-z-download ("*Davis*").

[8] *Id.*

[9] https://help.bereal.com/hc/en-us/articles/10738198628637-Our-Mission-and-Values, (last accessed Jul. 11, 2023).

[10] *Id.*

[11] https://www.spglobal.com/marketintelligence/en/news-insights/podcasts/next-in-tech-episode-123, (last accessed Jul. 11, 2023).

[12] https://www.businessofapps.com/data/bereal-statistics/, (last accessed Jul. 11, 2023).

5

17. In its most simple sense, BeReal's App works as follows: after signing up for the App, once a day, at a randomly selected time, users get a notification from the App to post a selfie and a picture of their surroundings simultaneously.[13] The goal of the spontaneity of the App's randomly timed notification is to get users to "take a photo of whatever [the user is] doing at that time, no matter how mundane or exciting."[14]

18. After receiving the notification from BeReal, the App's users have approximately two minutes to take the simultaneous selfie/surroundings photo.[15] When one of the App's users attempts to take a selfie without showing their face, they receive one of three messages alerting the user that their face is not in the image: (1) "who goes there," (2) "umm, anybody here?", and (3) "[y]our friends will definitely prefer to see your face!"[16]

19. An example can be seen below:[17]

---

[13] *Davis*.

[14] *Id.*

[15] https://help.bereal.com/hc/en-us/articles/7350386715165--Time-to-BeReal-, (last accessed Jul. 11, 2023).

[16] Taylor Annabell/King's College London, "'*Bonus Point For The Smile!' The Directive of Happiness on BeReal*," FLOW JOURNAL (ONLINE) (Feb. 10, 2023) at http://www.flowjournal.org/2023/02/smile-directive-happiness-bereal/.

[17] *Id.*



20. Next, if the App user is not smiling in the photo, they get a directive from BeReal to do so. These directives either say: (1) "[s]mile now, uh I mean now," (2) "[s]ay cheese!", and (3) "[w]ait, wait, wait now smile."[18] For example:[19]



---

[18] *Id.*

[19] *Id.*

21. Next, the BeReal App complements the user if they do in fact smile in the selfie-component of the image being taken. Those complements either say: (1) "Aye what a smiiile," (2) [k]eep smiling and don't change a thing," and (3) [b]onus point for the smile!"[20]

22. Each time the BeReal App user is prompted to take a selfie for their daily post, BeReal uses facial detection to determine whether there is a face in the image. The App then scans an image of the user's face using facial recognition to create a detailed map of the user's facial features in order to ascertain whether the user's face is smiling.

23. Undoubtedly, Defendant uses facial deteaction to compare the facial geometry of a preset facial geometry templates to determine the user's facial gestures.

24. Regardless of where the Defendant stores these facial geometry templates, as well as the facial geometry of Plaintiff and the Class members, BeReal is in control of the facial recognition data it obtains without adequate consent.

25. BeReal also does not disclose the collection or capture of facial geometry in its privacy policy.

### B. Biometric Data and Facial Recognition Technology

26. Biometric technologies, at the most basic level, collect biometric data and use that data to identify or recognize a person based upon some biometric identifier. Specifically, as relevant here, facial recognition technology is a category of biometric technology that analyzes facial features to identify a person.

27. Facial recognition technology operates by detecting an individual's face in person or from an image. A facial recognition technology system then generates a unique faceprint (similar to a fingerprint) by performing an analysis of facial geometry and other features of the

---

[20] *Id.*

9

face, such as the distance between the nose and the mouth, the shape of the cheekbones, depth of eye sockets, and contour of the lips, ears and chin, among other unique measurements and features.

### C. Illinois Enacts the Biometric Information Privacy Act

28. Passed into law by the state of Illinois in 2008, BIPA seeks to safeguard individuals' biometric identifiers and information.

29. Biometric identifiers include a scan of an individual's face geometry.[21]

30. Pursuant to BIPA, private entities, such as Defendant, are, among other things: (a) prohibited from collecting, capturing or otherwise obtaining an individual's biometric identifiers and information without providing written notice and obtaining a written release; (b) prohibited from selling, leasing, trading or otherwise profiting from an individual's biometric identifiers and information; (c) prohibited from disclosing, redisclosing or otherwise disseminating an individual's biometric identifiers or information in the absence of circumstances specifically set forth in the statute; and (d) required, to the extent it is in possession of biometric identifiers or information, to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying such identifiers and information.[22]

31. BIPA provides for a private right of action and permits a prevailing party to recover liquidated damages in the amount of: (a) $1,000 or actual damages, whichever is greater, for negligent violations of its provisions; and (b) $5,000 or actual damages, whichever is greater, for

---

[21] 740 ILCS § 14/10, *et seq*.

[22] *Id.*

intentional or reckless violations of its provisions.[23] BIPA also allows for the recovery of attorneys' fees and costs and injunctive relief.[24]

### D. BeReal's Collection and Use of Biometric Data

32. In order to determine whether there is a face present in a BeReal selfie as well as whether the face (or faces) in the image are smiling, BeReal uses facial detection and facial recognition, respectively. BeReal does not make the disclosures required by BIPA in connection with its collection of biometrics and does not obtain the informed written consent of users in violation of BIPA. Additionally, BeReal does not disclose that it collects biometrics in either its Terms of Service, Privacy Policy, or Community Standards.

33. With respect to determining whether a face is present, BeReal uses facial detection technology to determine whether there is a face in the selfie image when prompted to take said image by the App. Specifically, to determine whether there is a face in the image, BeReal's facial detection technology uses machine learning technology to find and identify human faces in digital images – here, in the user's selfie(s).

34. With respect to determining whether that face is smiling, BeReal uses facial recognition technology to determine whether the face in the selfie image is smiling when promoted to take said image by the App. To determine whether the face is smiling, the facial recognition technology that the App uses deploys facial mapping, which measures, compares, and tracks the geometric "landmarks" of a user's face (*i.e.*, the lips, the nose, the eyes, etc.), and the distance between those specific landmarks.

---

[23] *Id.*

[24] *Id.*

35. BIPA governs, relevant to this case, biometric identifiers, which means "a scan of the … facial geometry."[25]

### E. Harm to the Class

36. Plaintiff did not know that Defendant would collect, obtain, store, and/or use his biometric identifiers or biometric information. Plaintiff did not give informed written consent to collect, obtain, store, and/or use his biometrics, nor was Plaintiff presented with or made aware of any publicly available retention schedule regarding his biometrics.

37. Likewise, Plaintiff was never provided with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage, or use of his unique biometric identifiers and/or biometric information.

38. By collecting, obtaining, storing, and using Plaintiff's biometrics without his consent, written or otherwise, Defendant invaded Plaintiff's statutorily protected right to privacy in his biometrics.

## V. CLASS ALLEGATIONS

39. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of himself and a Class of similarly situated individuals, defined as follows:

> **Class Definition.** All BeReal users located in Illinois (who are U.S. citizens or residents) for whom BeReal created and/or stored a face template during the statutory period through the present day.

40. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly

---

[25] *See, e.g.,* 740 ILCS § 14/10.

execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors, and assigns of any such excluded persons.

41. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least thousands of users who fit within the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

42. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. whether the Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers and/or biometric information;

   b. whether the Defendant properly informed Plaintiff and the Class of the existence of (and purposes for) its collecting, using, and storing their biometric identifiers and/or biometric information;

   c. whether Defendant obtained a written release to collect, use, and store Plaintiff's and Class member's biometric identifiers and/or biometric information;

   d. whether Defendant developed a written policy, made available to the public, establishing a clear retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting and/or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first; and

      e.    whether Defendant complies with any such written policy (if one even exists).

43.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

44.    **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## VI. CAUSE OF ACTION

### COUNT I

### Violation of 740 ILCS 14/1, *et seq.*

### (*On behalf of Plaintiff and the Class*)

45. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

47. Section 15(a) of the BIPA requires that: any private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, and must establish a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

48. Section 15(b) of the BIPA makes it unlawful for any private entity to, among other things: "[C]ollect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information."

49. Plaintiff and the Class members are individuals who had their biometrics collected and stored by Defendant.

50. Defendant does not provide a written, publicly available retention schedule and guidelines for permanently destroying the biometrics of Plaintiff or Class members, as required by BIPA. Defendant's failure to provide such a schedule and guidelines constitutes an independent violation of the statute.

51. Additionally, Defendant systematically collected, used, and stored Plaintiff's and Class members' biometrics derived from Plaintiff's and Class members' facial geometry without first obtaining the written release required by and thereby uniformly invaded Plaintiff's and each Class members' statutorily protected right to privacy in their biometrics. Likewise, Defendant failed to properly inform Plaintiff or members of the Class in writing that their Biometric Data was being collected, stored, or otherwise obtained, and of the specific purpose and length of term for which those biometrics were being collected, stored, and used, as required by BIPA.

52. Plaintiff and the Class have been directly harmed by Defendant's violations of Sections 14/15(a) and (b) of BIPA. They have been deprived of their control over their valuable Biometric Data information and otherwise suffered monetary and non-monetary losses. By depriving Plaintiff and the Class of control over their valuable information, Defendant misappropriated the value of their biometric identifiers and/or biometric information.

53. Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiff's and/or members of the Class's Biometric Data as described herein constitutes a separate violation of the statutory right of Plaintiff and each Class member to keep private this biometric information, as set forth in BIPA.

54. On behalf of himself and members of the proposed Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the

collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $5,000 for each and every intentional and reckless violation of BIPA, or, alternatively, statutory damages of $1,000 for each and every violation pursuant to 740 ILCS 14/20 if the violations are found to have been committed negligently; and (3) reasonable attorneys' fees and costs and other litigation expenses.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B. Declaring that the actions of Defendant, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C. Awarding statutory damages;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an order requiring that Defendant ensures its collection, storage, and usage of biometrics complies with BIPA;

E. Awarding Plaintiff and the Class statutory damages of $5,000 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), and statutory damages of $1,000 for each and every negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

F. Awarding restitution of all monies, expenses, and costs due to Plaintiff and the Class;

G. Awarding Plaintiff and the Class reasonable litigation expenses and attorneys' fees;

H. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

I. Awarding such other and further relief as equity and justice may require.

## VIII. JURY TRIAL DEMAND

55. Plaintiff hereby demands that this matter be tried before a jury.


Dated: July 30, 2023                                  Respectfully submitted,

                                                      */s/ Blake Hunter Yagman*

                                                      Israel David
                                                      israel.david@davidllc.com
                                                      Blake Hunter Yagman
                                                      blake.yagman@davidllc.com
                                                      **ISRAEL DAVID LLC**
                                                      17 State Street, Suite 4010
                                                      New York, New York 10004
                                                      Tel.: (212) 739-0622